```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
```

UNITED STATES OF AMERICA,    :
    Plaintiff
                                           :

    vs.    : CRIMINAL NO. 1:CR-08-126

                                           :

RALPH DOUGLAS TRACEY,
    Defendant    :

*M E M O R A N D U M*

I.    *Introduction*

    Defendant, Ralph Douglas Tracey, has been indicted for a violation of 18 U.S.C. § 2255A(a)(2)(A), receiving and distributing child pornography, and for a violation of 18 U.S.C. § 2252A(a)(5)(B), possession of child pornography.

    We are considering his motion to suppress evidence seized under the authority of a search warrant. On its face, the warrant authorized the seizure of items or images "representing the possible exploitation of children." It also authorized the seizure of computer input and output devices and other devices normally used with a computer. Defendant argues that the warrant violated the Fourth Amendment because it lacked particularity and hence was a general warrant. Defendant also seeks to suppress a statement he made to the police officers executing the warrant because the statement is a product of the illegal search conducted pursuant to the warrant.

In opposing the motion, the government first argues that it is sufficient that the application for the warrant, rather than the warrant, contained specific language, here by incorporating the language of the affidavit of probable cause. It also argues the good faith exception to the exclusionary rule applies and allows the use of all the seized evidence in Defendant's criminal proceedings, even if the warrant was defective. Finally, it argues that the warrant can be redacted, based on the same incorporated language from the affidavit.

We will grant Defendant's motion. The warrant is a general warrant, and the incorporation rule does not assist the government because the limiting language was not incorporated into the warrant; it is not enough that it was incorporated into the application. Additionally, because a reasonably objective police officer would have recognized that the warrant was facially defective, the good faith exception does not apply. Further, redaction does not apply here because that principle cannot be used to save a general warrant.

II.   *Background*

On January 30, 2006, James A. Holler, the Chief of Police of Liberty Township, Adams County, Pennsylvania, submitted the application for the search warrant to a Pennsylvania magisterial district judge. Chief Holler had also

2

prepared the application. The application's first page was a standard, one-page form. The top portion of the first page was the application, containing boxes to identify the items to be seized and the premises to be searched. The lower portion was the warrant, if the judge signed it to authorize the search. The next seven pages of the application consisted of the affidavit of probable cause, which Chief Holler had also drafted.

The box for the description of the "items to be searched for and seized" instructed that the description "be as specific as possible." The Chief wrote the following description:

> Any items, images or visual depictions representing the possible exploitation of children including videotapes or photographs.
>
> COMPUTERS: Computer input and output devices to include but not limited to keyboards, mice, scanners, printers, monitors, network communication devices, modems and external or connected devices used for accessing computer storage media.

(Doc. 23, Govt.'s Opp'n Br., Attach. 1).[1] In addition, the application indicated that it had been approved by the district attorney and that the probable cause affidavit was attached. Finally, the application indicated in a separate box that the

---

[1] Defendant's residence was described in the box for premises to be searched. The place of the search is not an issue.

crimes involved were violations of 18 Pa. C.S. § 6312(c) and (d).[2]

In the affidavit of probable cause, Chief Holler stated the following concerning the items he wanted to search for and seize:

> Your affiant, based on his experience and expertise, expects to find within the [Defendant's] residence . . . items which are/were used to commit the crime of Sexual Abuse of Children, to wit, 18 PA. C.S.A. section 6312(c), (d). Your affiant has delineated the items your affiant expects to find within said location which is captioned under "Items to be searched for and seized", and your affiant incorporates that list herein. Possession of these items are either in and of themselves a crime or they are/were utilized to commit a crime, to wit, Sexual abuse of children, 18 PA. C.S.A. section 6312(c), (d).

(Doc. 23, Govt.'s Opp'n Br., Attach. 1, p. 2 of the probable-cause affidavit).

---

[2] In part, section 6312(c) makes it a crime for "[a]ny person" to knowingly distribute or possess for the purpose of distribution "any book, magazine, pamphlet, slide, photograph, film, videotape, computer depiction or other material depicting a child under the age of 18 years engaging in a prohibited sexual act or in the simulation of such act . . . ." Section 6312(d) makes it a crime for "[a]ny person [to] knowingly possess[ ] or control[ ] "any book, magazine, pamphlet, slide, photograph, film, videotape, computer depiction or other material depicting a child under the age of 18 years engaging in a prohibited sexual act or in the simulation of such act . . . ." A "prohibited sexual act" means sexual intercourse as defined in [18 Pa.C.S. §] 3101 (relating to definitions), masturbation, sadism, masochism, bestiality, fellatio, cunnilingus, lewd exhibition of the genitals or nudity if such nudity is depicted for the purpose of sexual stimulation or gratification of any person who might view such depiction."

In pertinent part, the probable-cause affidavit explains how the police had come to suspect Defendant had been involved in these crimes. A police officer experienced in computers and how they were used by criminals, including those interested in "child pornography," traced a movie he had found on a file-sharing site to a computer at Defendant's residence. The movie "depict[ed] a minor age female having vaginal sex with an adult male." (*Id.*, pp. 4-5).

Chief Holler also affirmed, from training and experience, that persons who look at "child pornography," rather than discard it, will keep the images for continued enjoyment and also to trade or sell. (*Id.*, p. 5). He also affirmed that they will hide such images in their computers under deceptive file names and that therefore their computers, and all other computer devices, must be taken from the premises and searched in a controlled environment. (*Id.*, p. 6). Chief Holler also affirmed "that persons trading in, receiving, distributing or possessing images involving the exploitation of children or those interested in the actual exploitation of children often communicate with others through correspondence and other documents . . . (whether digital or written) which could tend to identify the origin of the images as well as provide evidence of a persons (sic) interest in child pornography or child exploitation." (*Id.*).

On the same day, the magisterial district judge approved the application in the "search warrant" section of the one-page form under the following language:

> WHEREAS, the facts have been sworn to or affirmed before me by written affidavit(s) attached hereto from which I have found probable cause, I do authorize you to search the premises or persons subscribed, and to seize, secure, inventory and make return according to the Pennsylvania Rules of Criminal Procedure.

(Doc. 23, Govt.'s Opp'n Br., Attach. 1).

According to a state trial judge reviewing the circumstances of the search, Chief Holler and three Liberty Township police officers searched Defendant's premises, also on the same day. Chief Holler told Defendant and his wife that he was searching for "child pornography." (Doc. 20, Def.'s Br. in Supp., Ex. 1, p. 11). During the search of the residence, one of the officers remained with Defendant and his wife in the living room. Another building on the premises was also searched. As they walked to the other building, Chief Holler asked Defendant what they would find. Defendant replied that they would find on his computer a child-pornography movie he may have accidentally downloaded. The search of the residence and the other building took about one hour and one-half hours. (*Id.*).

The officers took: (1) one working laptop computer; (2) one broken laptop computer; (3) two floppy discs; (4) one

VPR Matrix computer tower with power cord; (5) one Sony videotape; (6) four other videotapes; (7) one box of nineteen videotapes; (8) one bag of nineteen videotapes; and (9) one HP computer tower with power cord. (*Id.*, p. 12).

The HP computer tower was searched. Initially, 208 images and forty-eight movies, believed to be child pornography, were taken from the computer. These were later reduced to 189 images and thirty-three movies. (*Id.*, pp. 12-13).

III.   Discussion

The Fourth Amendment requires that warrants "particularly describ[e] the place to be searched, and the persons or things to be seized." U.S. Const. amend IV. The particularity requirement is intended to prevent a general warrant, one that authorizes "a general exploratory rummaging through a person's belongings." *United States v. Christine*, 687 F.2d 749, 752 (3d Cir. 1982). The description of the items to be seized must be made with reasonable particularity, *Lesoine v. County of Lackawanna*, 77 Fed. Appx. 74, 78-79 (3d Cir. 2003)(nonprecedential), with particularity depending on the factual context of each case and the information available to the investigating officer at the time of the application for the warrant. *United States v. Yusuf*, 461 F.3d 374, 395 (3d Cir. 2006). "It is beyond doubt that all evidence seized pursuant to

7

a general warrant must be suppressed." *Christine*, *supra*, 687 F.2d at 758 (footnote omitted). Examples of general warrants are ones that authorize the seizure of "smuggled goods," or "obscene materials," or "illegally obtained films," or "stolen property." *Id.* at 753. A description that lacks particularity can be cured by more specific language in the probable-cause affidavit or in another document that accompanies the warrant, but the warrant must expressly incorporate that document. *Doe v. Groody*, 361 F.3d 232, 239 (3d Cir. 2004).

Aside from being a general warrant, a warrant may also be overly broad. "An overly broad warrant 'describe[s] in both specific and inclusive generic terms what is to be seized,' but it authorizes the seizure of items as to which there is no probable cause." *United States v. Ninety-two Thousand Four Hundred Twenty-two Dollars and Fifty-seven Cents*, 307 F.3d 137, 149 (3d Cir. 2002)(quoting *Christine*, *supra*, 687 F.2d at 753). Such a warrant can be cured by redaction. Redaction:

> strik[es] from a warrant those severable
> phrases and clauses that are invalid for
> lack of probable cause or generality and
> preserv[es] those severable phrases and
> clauses that satisfy the Fourth Amendment.
> Each part of the search authorized by the
> warrant is examined separately to determine
> whether it is impermissibly general or
> unsupported by probable cause. Materials
> seized under the authority of those parts of
> the warrant struck for invalidity must be
> suppressed, but the court need not suppress

>           materials seized pursuant to the valid
>           portions of the warrant.

*Christine*, *supra*, 687 F.2d at 754.

Defendant argues that the warrant is a general warrant because the items to be seized are described in general terms as items "representing the possible exploitation of children." He argues that the term "exploitation of children" is so imprecise that it allows the seizure of evidence that has no evidentiary value and is not even defined in 18 Pa. C.S. § 6312, the statute that justified the search. The addition of the word "possible" makes it even worse as it broadens the range of items to those that possibly depict the exploitation of children, not just those that actually do so.

In opposition, the government argues that particularity is supplied by the reference in the affidavit to the movie depicting "a minor age female having vaginal sex with an adult male." The government contends that we can consider this language in determining whether the warrant meets the particularity requirement of the Fourth Amendment because the affidavit was incorporated into the search-warrant application.

We disagree with the government's incorporation position. As noted above, the Third Circuit requires that the warrant expressly incorporate the accompanying affidavit. *Groody*, *supra*, 361 F.3d at 239 ("[I]t is perfectly appropriate

9

to construe a warrant in light of an accompanying affidavit or other document that is incorporated within the warrant. But to take advantage of this principle of interpretation, the warrant must expressly incorporate the affidavit."). It is not enough that the affidavit was incorporated in the application. Rather, it had to have been incorporated into the warrant. In *Groh v. Ramirez*, 540 U.S. 551, 557, 124 S.Ct. 1284, 1289, 157 L.Ed.2d 1068 (2004), the Supreme Court stated that "[t]he fact that the *application* adequately described the 'things to be seized' does not save the *warrant* from its facial invalidity. The Fourth Amendment by its terms requires particularity in the warrant, not in the supporting documents." *Id.* at 557, 124 S.Ct. at 1289.[3] *See also Groody*, *supra*, 361 F.3d at 241 ("The warrant provides the license to search, not the affidavit.").[4]

---

[3] The Court then noted that while most of the courts of appeals have allowed a warrant to refer to the application or affidavit, they require that the warrant incorporate the document and that the document accompany the warrant. As noted, this is the rule the Third Circuit follows. *See Groody*, *supra*. In *Groh*, the Supreme Court had no occasion to address the rule because the warrant at issue did not incorporate the affidavit nor did it accompany the warrant.

[4] Indeed, the cases the government cites in support of its argument all speak of the requirement or the significance of the document being incorporated into the warrant. *Massachusetts v. Sheppard*, 468 U.S. 981, 990 n.7, 104 S.Ct. 3424, 3429 n.7, 82 L.Ed.2d 737 (1984) (dictum); *United States v. Cherna,* 184 F.3d 403, 412 (5th Cir. 1999); *Baranski v. Fifteen Unknown Agents*, 452 F.3d 433, 440 (6th Cir. 2006)(en banc); *United States v. Towne*, 997 F.2d 537, 548 (9th Cir. 1993); *United States v. Weinstein*, 762 F.2d 1522, 1531 (11th Cir. 1985); *United States v. Dale*, 991 F.2d 819, 848-49 (D.C. Cir. 1993). Alternatively, the warrant had to refer to an attached list of items. *In Re*: *Search of Office of Tylman*, 245 F.3d 978, 979

Chief Holler did use language of incorporation but, as noted by Defendant, he incorporated the vague language of the warrant description, describing items to be seized as those "representing the possible exploitation of children," into the affidavit, rather than incorporating into the warrant the possibly limiting language of the affidavit, which referred to the statutory section that was allegedly violated.[5] This was not some clerical error. The point of incorporation by reference is that the warrant becomes limited by incorporation into it of the affidavit's language. That does not happen when the vague

---

(7th Cir. 2001).

The government also cites *United States v. Ortega-Jimenez*, 232 F.3d 1325, 1329 (10th Cir. 2000), but that is not an incorporation case. To the contrary, as recognized by the Third Circuit in *Groody*, it represents one category of cases that would allow "an affidavit . . . to save a defective warrant even when it has not been incorporated within that warrant." 232 F.3d at 240. We do not explore whether *Ortega-Jimenez* and cases like it might allow us to rely on the unincorporated affidavit as the government does not argue that incorporation is not necessary, preferring instead to contend that incorporation in the application is all that is needed. *Ortega-Jimenez* also appears to be factually different.

We also note that the government cites *Groody* as a case where an unincorporated affidavit could not be used to supplement a warrant, which would seem to be dispositive of relying on cases like *Ortega-Jimenez*. However, *Groody* is distinguishable because it dealt with an affidavit that would have expanded the scope of the warrant, and the Third Circuit held that an unincorporated affidavit could not expand the warrant's authorization to search. 361 F.3d at 244. Here, on the other hand, the government is attempting to narrow the warrant by reference to the affidavit.

[5] He also incorporated a more specific description of the computer items, but we will deal with that issue when we address the government's redaction argument.

11

language of the warrant is incorporated into the affidavit instead.

We therefore agree with Defendant that we deal here with a general warrant. A warrant that authorizes a search for items "representing the possible exploitation of children" is one that allows a general "rummaging" through the belongings of the defendant, Christine, supra, 687 F.2d at 752, and hence any evidence seized pursuant to that warrant must be suppressed. *Id.* at 758.

The government argues that the good faith exception to the exclusionary rule allows admission of the evidence seized under the authority of the warrant. In support, it contends that any error Chief Holler made was because of the way the one-page form was drafted. The Chief simply complied with the form, checking the boxes where indicated. Thus, any error in failing to incorporate the affidavit into the warrant would have been the result of the form, which the government characterizes as a clerical one that can be ignored.

We disagree. The Fourth Amendment requires a particular description of the items to be seized. In any event, the form itself instructs the drafting officer "to be as specific as possible" in describing the items, so the form cannot be the cause of the drafting error. In addition, Chief Holler was aware that he was not confined by the options

12

supplied by the form. He actually used incorporation language, albeit opposite the way he should have.

Under the good faith exception to the exclusionary rule, "suppression of evidence 'is inappropriate when an officer executes a search in objectively reasonable reliance on a warrant's authority.'" *Ninety-two Thousand*, *supra*, 307 F.3d at 145 (quoting *United States v. Williams,* 3 F.3d 69, 74 (3d Cir. 1993)). The test is "'whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization.'" *Id.* at 145-46 (quoted case omitted). The warrant here, as it relies on a description of items involving the "exploitation of children," fails this test. This language is so facially defective that no reasonable police officer should have relied on it. *Id.* at 146 (among other situations in which the good faith exception does not apply is when the warrant "was so facially deficient that it failed to particularize the place to be searched or the things to be seized")(quoted case omitted).

The government's final argument is that the warrant can be redacted because the affidavit mentions the movie that was traced to Defendant's computer, the movie depicting "a minor age female having vaginal sex with an adult male." We reject this position. The affidavit is not part of the warrant, and redaction acts on the warrant alone. As noted above, redaction

13

"strik[es] from a warrant those severable phrases and clauses that are invalid for lack of probable cause or generality and preserv[es] those severable phrases and clauses that satisfy the Fourth Amendment." *Christine*, *supra*, 687 F.2d at 754. Hence, this argument for redaction fails. *See also United States v. Cochran*, 806 F. Supp. 560, 566 (E.D. Pa. 1992)(court could not use redaction to sift evidence seized under a warrant improperly allowing seizure of nude photographs of minors to find those items that satisfy the state law against sexual abuse of children as "[i]t is the warrant that may be 'redacted,' not the evidence").

We note that another argument might have been made for redaction. The warrant is specific in one aspect; it describes as items that may be seized "computer input and output devices to include but not limited to keyboards, mice, scanners, printers, monitors, network communication devices, modems and external or connected devices used for accessing computer storage media." This is sufficiently specific, given that the affidavit of probable cause explains why any computer and ancillary equipment had to be seized and taken off the premises to be searched. *See United States v. Upham*, 168 F.3d 532, 534-35 (1st Cir. 1999).

It could have thus been argued that the warrant can be redacted to allow seizure and search of the computer equipment.

14

However, redaction applies only to warrants that are overly broad, that is, warrants that use specific and inclusive generic terms, such as the warrant in *Christine*, *supra*, which described the items to be seized as "all folders . . . all checks . . . all general ledgers," and "all correspondence." 687 F.2d at 753. Redaction is accepted in that context, in part:

> because even though it may not be coterminous with the underlying probable cause showing, the scope of a search pursuant to a particularized, overbroad warrant is nevertheless limited by the terms of its authorization. In the case of a warrant containing some invalid general clauses, redaction neither exacerbates nor ratifies the unwarranted intrusions conducted pursuant to the general clauses, but merely preserves the evidence seized pursuant to those clauses particularly describing items to be seized.

Id. at 758. But here the phrase "representing the possible exploitation of children" makes the warrant a general one, and "[t]he cost to society of sanctioning the use of general warrants" is too high. *Id. See also Yusuf*, *supra*, 461 F.3d at 393 n.19 (there is a "legal distinction" between a general warrant and an overly broad one and while an overly broad one can be redacted, "the only remedy for a general warrant is to suppress all evidence obtained thereby").

It follows from the above discussion that Defendant's statement at the time of the search must also be suppressed. *See United States v. Herrold*, 962 F.2d 1131, 1137 (3d Cir. 1992)

15

(tangible or testimonial evidence must be excluded if obtained as the result of an illegal search); *United States v. Murphy*, 402 F. Supp. 2d 561, 571 (W.D. Pa. 2005)(excluding a handgun and any statements made after an unconstitutional traffic stop).

We will issue an appropriate order.

                                          <u>/s/William W. Caldwell</u>
                                          William W. Caldwell
                                          United States District Judge

Date: June 30, 2008

```
          IN THE UNITED STATES DISTRICT COURT
        FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
```

UNITED STATES OF AMERICA,  :
        Plaintiff

                                  :

        vs.                       :  CRIMINAL NO.  1:CR-08-126

                                  :

RALPH DOUGLAS TRACEY,
        Defendant            :

*O R D E R*

AND NOW, this 30th day of June, 2008, it is ordered that:

    1. Defendant's motion (doc. 19) to suppress is granted.

    2. All evidence seized, and statements obtained, as a result of the execution of the January 30, 2006, search warrant are hereby suppressed.

                            <u>/s/William W. Caldwell</u>
                            William W. Caldwell
                            United States District Judge